## HAYES *v.* CARROLLTON BANK.

1. A promissory note which purports to be indorsed in stencil by the payee, with the added words "by [a named person] pt.," is prima facie admissible in evidence as between the maker and transferee, on the trial of a suit brought by the latter against the former to recover the amount due on the note.

2. Where in a suit on a promissory note, brought by the transferee against the maker, the defense set up is fraud in its procurement, of which the transferee had notice before purchasing the note, and the evidence is not sufficient to show fraud in the procurement of the note, it is not error to direct a verdict for the plaintiff.

JUNE 18, 1915.

Attachment. Before Judge Edwards. Haralson superior court. April 8, 1914.

*I. N. Cheney* and *Griffith & Matthews,* for plaintiff in error.
*James Beall* and *B. F. Boykin,* contra.

HILL, J. The Carrollton Bank obtained an attachment against John N. Hayes, on the ground that Hayes was disposing of his property subject to the payment of his debts, in order to avoid the payment thereof, or was threatening or preparing to do so. A petition in attachment was also filed by the bank against Hayes, alleging that the defendant was due the plaintiff the sum of $500, besides interest, on a certain promissory note executed by Hayes to the Paul C. Jack Company, and due on the 1st day of November, 1910. It was alleged that the note was transferred in writing to the Carrollton Bank on or about March 1, 1910, for value, by the payee of the note. The defendant filed an answer averring that the note sued on was procured by fraud, in that Allen, Beddingfield and Company, who were agents and employees of the Paul C. Jack Company, induced the defendant to sign the note by false representations as to the value of the stock and what it would bring in the market, and guaranteed to the defendant that if he would sign the note they would sell the stock for double the amount of the note before it became due, all of which they failed to do, knowing at the time that the stock was worthless and of no value whatever. It was further alleged, that the Carrollton Bank had full knowledge of the fraudulent means used in procuring the note, and knew that the note was without consideration and procured by fraud; that the president of the bank, J. T. Bradley, was one of the directors in the Paul C. Jack Company, and knew all about the inside management of that company, and knew that it was insolvent, and knew of the fraudulent means employed in procuring the note; that the cashier of the Carrollton Bank was secretary of the above-named company, and likewise knew, at the time the bank secured the note sued on, that it was without consideration, and was procured by fraud. At the conclusion of the evidence the presiding judge directed a verdict in favor of the plaintiff for the sum of $500 principal, and $144.44 interest. A motion for new trial was overruled, and the defendant excepted.

1. Error is assigned because the court admitted in evidence the note sued on, over the objection of the defendant that there was no legal transfer of the note from the Paul C. Jack Company. The back of the note bears a stencil mark, "Paul C. Jack Company, by Paul C. Jack, pt." It is contended, that this entry on the back of the note does not show that the transfer was made by any officer or

agent of the Paul C. Jack Company, or by any one having authority to put the name of the company on the note in stencil; and that the addition of the letters "pt." after the company's name did not show such authority; and that the admission of the note in evidence, without proving authority from the company to transfer it, was error. We do not agree to this contention. The holder of the note with a transfer regular on its face will be held, prima facie, to have the right to it; and this will authorize the transferee to bring suit thereon.

2. Did the court err, under the pleadings and the evidence, in directing a verdict for the plaintiff? The defendant in his answer alleged, that the note was without consideration and void; that the agents of the corporation who sold him the stock fraudulently represented it to be valuable, when in fact it was worthless, and this was known to the agents when they represented it to be valuable stock; and that the plaintiff was not a bona fide purchaser. We think this case falls within the rule as to "tradesman's brag," and "puffing, or dealer's talk," and the like. There is evidence tending to show that the agent (Beddingfield) represented that the stock at the time he sold it was good and valuable, but there is no evidence that at the time the stock was purchased it was not valuable, or that the company was insolvent as alleged. It may have subsequently become so, but there is no evidence to the effect that at the time of the sale of the stock the representations made to induce the plaintiff to purchase the stock were false and fraudulent as alleged. As long as the company was a going concern, meeting its obligations, and had assets consisting of solvent notes, office furniture, etc., which the uncontradicted evidence showed was the case at the date of the sale, it could not be said that the stock was worthless. We do not think that the allegations of the answer and the evidence in support of it were such as would authorize the defendant to prevail in the suit. It is but another instance of an innocent citizen being made to part with his hard-earned money by the plausible "puffing" of the sales agent, which, though it leads to an unwise investment, is not shown to be fraudulent within the meaning of the law. Under the pleadings and the evidence, the court did not err in directing a verdict for the plaintiff.

*Judgment affirmed. All the Justices concur.*